UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE PENSION FUND
OF LOCAL NO. ONE, I.A.T.S.E.,
                          Plaintiff,

                -v-

DENNIS ROBBINS, *et al.*,
                          Defendants.

23-CV-124 (JPO)

MEMORANDUM AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiff Trustees of the Pension Fund of Local No. One, I.A.T.S.E. (the "Fund") brings this interpleader action against Defendants Dennis Robbins and Mary Ellen Sanchez to resolve competing claims to certain pension benefits.

Before the Court is Defendant Robbins's motion for summary judgment. For the reasons that follow, the Court grants Robbins's motion and directs him to submit a proposed order on the docket consistent with this Memorandum and Order.

**I.    Background**

The following facts are drawn from Robbins's motion for summary judgment and are undisputed. Robbins and Sanchez were married in September 1982, and they were divorced in September 1992. (ECF No. 30 at 2.) Robbins holds a pension plan administered by the Fund, part of which is subject to equitable distribution as marital property. (*Id.*) Specifically, the settlement agreement between Robbins and Sanchez that was entered by the Superior Court of New Jersey, Chancery Division states: "The Wife shall receive one-half (1/2) of the pension benefit earned from the date of the marriage, September 13, [1982] until July 12, 1991, paid to her directly from the pension fund by means of a Qualified Domestic Relations Order which shall be prepared by the Wife's attorney." (ECF No. 30-1 at 14.)

1

On March 7, 1995, the Superior Court of New Jersey entered a Qualified Domestic Relations Order ("QDRO") assigning a portion of Robbins's pension benefit to Sanchez. (ECF No. 30 at 2.) The QDRO states that Sanchez "shall receive fifty (50%) percent of the 'marital benefit' which for this purpose shall be calculated as a fraction of the pension benefit to which the Participant shall be entitled on his retirement under [the plan] where the numerator of the fraction shall be the number nine (9) and the denominator shall be the number of years of pension credit earned by the Participant under [the plan] from the date he entered such Plan through the end of 1991." (ECF No. 30-2 at 3.)

On January 6, 2023, the Fund filed an interpleader complaint seeking declaratory and injunctive relief regarding the portion of Robbins's pension benefit to which Sanchez is entitled. (ECF No. 1.) On November 6, 2023, Defendant Robbins filed a motion for summary judgment. (ECF No. 29.) On December 5, 2023, the Fund informed the Court that it did not oppose Robbins's motion for summary judgment. (ECF No. 32.) On December 14, 2023, Defendant Sanchez filed a letter opposing Robbins's motion. (ECF No. 33.)

**II.      Legal Standard**

To survive summary judgment, a nonmovant must raise a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). To raise such an issue requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Moreover, a nonmovant "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted). Rather, they "must offer some hard evidence showing that [their] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). The movant can prevail if, after discovery, "there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks and citation omitted). If the movant does produce evidence tending to exclude the possibility of a genuine dispute of material fact, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita*, 475 U.S. at 587 (internal quotation marks and citation omitted) (emphasis in original).

### III.   Discussion

Under New York law, certain pension benefits qualify as marital property. *Nugent-Schubert v. Schubert*, 931 N.Y.S.2d 642, 644 (2d Dep't 2011). The distribution of such benefits between former spouses can be accomplished through a qualified domestic relations order (QDRO). *See Berardi v. Berardi*, 865 N.Y.S.2d 245, 248 (2d Dep't 2008). "When the distribution of pension benefits between former spouses is accomplished through a QDRO obtained pursuant to a stipulation, such QDRO can convey only those rights to which the parties stipulated as a basis for the judgment." *Id.* (internal quotation marks and citation omitted); *see also Kraus v. Kraus*, 14 N.Y.S.3d 55, 60 (2d Dep't 2015). Thus, "[i]f a QDRO is inconsistent with the provisions of a stipulation or judgment of divorce, courts possess the authority the amend the QDRO 'to accurately reflect the provisions of the stipulation pertaining to the pension benefits.'" *Kraus*, 14 N.Y.S.3d at 60 (quoting *Berardi*, 865 N.Y.S.2d at 248). Any such underlying stipulation is, like any other contract, "subject to principles of contract construction and interpretation." *Id.*

Here, the QDRO that was issued is inconsistent with the provisions of the divorce settlement agreement between Robbins and Sanchez. That agreement specified that Sanchez would receive "one-half (1/2) of the pension benefit earned from the date of the marriage, September 13, [1982] until July 12, 1991, paid to her directly from the pension fund by means of

3

a Qualified Domestic Relations Order which shall be prepared by [her] attorney." (ECF No. 30-1 at 14.) As that language makes clear, Sanchez is entitled to a portion of Robbins's pension benefit earned during a nine-year period, from 1982 through 1991.

The QDRO, however, creates an ambiguity that suggests that Sanchez may be entitled to Robbins's pension benefits based on his employment after 1991, which constitutes a greater share than the underlying settlement agreement provides. The QDRO states that Sanchez shall receive a portion of Robbins's pension benefits, which are to be calculated as "a fraction of the pension benefit to which [Robbins] shall be entitled *on his retirement under [the plan]*." (ECF No. 30-2 at 3 (emphasis added)). As the Fund had previously pointed out in a letter to Defendants, that language is ambiguous because its reference to the time at which Robbins retires can be read as granting Sanchez "an increased benefit based on Mr. Robbins' employment following the divorce," giving Sanchez a share of the benefits Robbins received after 1991. (*See* ECF No. 1-2 at 2-3.) The underlying settlement agreement between Robbins and Sanchez, however, states that Sanchez is to receive a portion of the pension benefit earned from September 1982 to July 1991. (ECF No. 30-1 at 14.) The QDRO is inconsistent with the underlying settlement agreement, then, insofar as it grants Sanchez a portion of Robbins's pension benefits earned after July 1991.

A court "cannot issue a QDRO encompassing rights not provided in the underlying stipulation, or one that is more expansive than the stipulation." *Kraus*, 14 N.Y.S. 3d at 60 (internal quotation marks and citation omitted). Here, the QDRO appears to provide Sanchez with greater benefits than what is provided to her in the underlying stipulation. "When, as here, the QDRO conflicts with the stipulation of settlement upon which it was based, the stipulation of settlement controls, and the QDRO must be modified accordingly." *Condon v. Condon*, 848

4

N.Y.S.2d 270, 272 (2d Dep't 2007) (concluding that a QDRO conflicted with the stipulation when the stipulation was based on "the relevant 17-year period the former husband was working" while the QDRO calculated the wife's share "based upon [her husband's] final pension benefits" instead of being "limited to her interest in it as provided for in the stipulation"); *see also Berardi*, 865 N.Y.S. 2d at 249.

Accordingly, the Court grants Robbins's motion for summary judgment. Specifically, the Court grants Robbins's request to authorize him to draft a proposed order for the Court's consideration that directs the Fund to disburse his pension benefit consistent with the divorce settlement agreement.

**IV.  Conclusion**

For the foregoing reasons, Defendant Robbins's motion for summary judgment is GRANTED.

Defendant Robbins is directed to confer with Plaintiff and to file a proposed judgment within fourteen days, consistent with this memorandum and order, that addresses the allocation of funds to himself and to Defendant Sanchez and directs Plaintiff to disburse those funds accordingly.

The Clerk of Court is directed to close the motion at ECF Number 29.

SO ORDERED.

Dated: June 24, 2024
       New York, New York

                                         J. PAUL OETKEN
                                        United States District Judge